IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-1159-MJW-PAC

NORMAN L. GICANTE,

Plaintiff,

v.

JO ANNE B. BARNHART,

Defendant.

---

**MEMORANDUM DECISION AND ORDER**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before the court to conduct all proceedings and order the entry of judgment in the case upon consent of the parties and an Order of Reference Pursuant to 28 U.S.C. § 636(c) issued by District Judge Wiley Y. Daniel on September 20, 2005 (Docket No. 28).

This is an appeal pursuant to 42 U.S. C. §§ 405(g) and 1383(c). Plaintiff, through counsel, appeals a final decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income ("SSI") benefits. The case had been remanded for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g) by Judge Kane when defendant's Unopposed Motion to Remand was granted.

Following remand, the same administrative law judge ("ALJ") who first heard the plaintiff's application held another hearing at which plaintiff appeared and was once again represented by counsel. A vocational expert ("VE") also appeared, but the ALJ did not ask her any questions because a VE testified at the previous hearing.

In his decision, the ALJ followed the sequential-evaluation process and found at the fifth step that the plaintiff was not disabled and thus is not eligible for SSI. (Administrative Record ["Rec."] at 241-43). More specifically, he found that the plaintiff had the "residual functional capacity ["RFC"] to lift and carry twenty pounds occasionally and ten pounds frequently, stand one hour at a time and sit two hours at a time throughout an eight hour workday. The [plaintiff] needs to avoid temperature extremes and concentrated exposure to humidity. The [plaintiff] is able to understand, remember and carry out short and simple instructions and he is able to have occasional contact with supervisors, coworkers and the public." (Rec. at 242). Based upon this RFC, as well as the plaintiff's age (50 - which is "closely approaching advanced age"), high school education, and unskilled work experience, and based upon the VE's testimony, the ALJ determined that "[a]lthough the [plaintiff] is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a housekeeper, floor sweeper and silver wrapper." (Rec. at 242). In addition, the ALJ found that the plaintiff's alcohol dependency is not a contributing factor material to the determination of disability. (Rec. at 242).

Defendant's response brief (Docket No. 23) contains an accurate, thorough

summary of the background information and relevant medical and other evidence, and that summary is adopted herein. (See Docket No. 23 at 6 - 15).

Plaintiff seeks reversal of the ALJ's decision on the following grounds: (1) the ALJ erred as a matter of law by failing to give proper weight to the opinion of the plaintiff's treating physician; (2) the ALJ failed to assess adequately the plaintiff's physical and mental impairments; and (3) the ALJ should have developed the record further if he was going to reject the treating physician's opinion.

The court has very carefully reviewed the plaintiff's opening brief (Docket No. 21), defendant's response brief (Docket No. 23), plaintiff's reply brief (Docket No. 24), and the entire administrative record (Docket No. 18). Substantially for the reasons stated in the defendant's response brief, the court finds that the ALJ's decision issued on July 2, 2003, is supported by substantial evidence[1] and applied the correct legal standards. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005) ("The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether she applied the correct legal standards."). Therefore, the decision is affirmed.

**Treating Physician's Opinion**

"In deciding how much weight to give a treating source opinion, and ALJ must first determine whether the opinion qualifies for 'controlling weight.'" Watkins v.

---

[1]"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . 'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

Barnhart 350 F.3d 1297, 1300 (10th Cir. 2003). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "consistent with other substantial evidence in the record." Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation omitted). Even if the opinion is not entitled to controlling weight, it is

> still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927. . . . Those factors are: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. . . . After considering the pertinent factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion. . . . Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so.'"

Watkins v. Barnhart, 350 F.3d at 1300-01 (citations omitted). An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis omitted).

Here, plaintiff was seen intermittently since April 1994 at the Stout Street Clinic. Doctor Ed Farrell, a Family Practice physician at that clinic, most recently opined in a letter dated March 13, 2003, that he believed "without doubt that with [plaintiff's] limited education, extremely limited past work experience, on going medical problems, and diagnosis of Schizoid Personality disorder, that he is incapable of any substantial

gainful activity now and in the future. His current low level of alcohol abuse is not contributing in any way to his disability. I also believe that [plaintiff] has not been able to work since July, 1999, and potentially even longer." (Record at 311). Previously, in a letter dated June 30, 2000, Dr. Farrell similarly opined that he believed "that with [plaintiff's] extremely limited education, limited past work experience, and ongoing medical problems, that he is incapable of any substantial gainful activity now or in the future." (Rec. at 218). In the lengthy March 13, 2003, letter, Dr. Farrell stated:

> Today I saw [plaintiff] and spent a considerable amount of time with him procuring his medical, psychiatric, substance use, and social history. He presented as somewhat unkempt, gave short answers, and talked very slowly. Norman has a flat affect, appears emotionally cold and distant, and engaging with him is difficult.
>
> His work history remains consistent with the work history I obtained in June, 2000. [Plaintiff] states that his is not certain of the accuracy of some of the dates he quotes from the past. He states that he is currently able to work day labor jobs one or two days per month if it is "light stuff". He is not working day labor more frequently because there is no work available. By history, [plaintiff's] last steady job was in the 1980's, during which time he washed dishes for one month consecutively. Since that time, he has only had jobs that have involved day labor positions. [Plaintiff's] only prior work history of holding a job for greater than six months was in approximately 1978, when he held the same factory job for 10 months in Kansas.
>
> Significant current history regarding depressive symptoms does not reveal a major depressive disorder. His concentration, energy level, and appetite are "pretty good", he has intermittent poor sleep, does not have very much interest in things, which is unchanged, and he has had suicidal ideation in the past without intent, but none recently. He has no evidence of significant past trauma, nor does he have PTSD symptoms of intrusions, hyper-arousal, or avoidance.
>
> Very important history was elicited today regarding [plaintiff's] social interactions and past history. [Plaintiff] has never married, and his last sexual partner was eight years ago. This relationship was sporadic.

He doesn't like to be around people, and "has always been a loner". He does not have a close relationship with any other people, and almost always prefers solitary activities. Norman does not desire any close relationships. [He] states that he was not ever close to anyone in his family, althought [sic] he was caretaker for his mother in Missouri in the early 1980's. He has little interest in having sexual experiences with another person, and when he last had this type of relationship eight years ago, he did not enjoy that part of the relationship.

[Plaintiff] drinks alcohol once or twice per month and has 1-2 drinks when he consume alcohol. He states he has been able to decrease use on his own. Chart review reveals that [plaintiff] has not had any clinic visits for years with alcohol intoxication.

Medical history for [plaintiff] includes that he fell 15 feet in July, 1999, with very significant injuries including rib fractures, basilar skull fracture with loss of consciousness, scapula fracture, and multiple lumbar spine transverse process fractures. Since that time, he has not been able to do heavy labor.

[Plaintiff] has noted that he develops significant low back pain after standing for one hour, and requires rest of up to 15 minutes for resolution of pain in this situation. Sitting for greater than two hours exacerbates this pain. He states that he is unable to lift more than 5 - 10 pounds secondary to back and shoulder pain. Walking for twenty minutes causes knee and low back pain, and he needs to rest five to [sic] minutes before resolution.

Today a full mini-mental status examination (MMSE) was performed which revealed a score of 29 out of 30, which is normal. [Plaintiff] is oriented to space and time, has intact immediate and short-term recall, calculates serial 7's without any errors, and scores normally on all parts of language assessment except for design copying. His full MMSE results are attached for your review. Prior physical examination findings from the disability letter dated June 2000 were not repeated, nor were radiographs. It is likely given the progressive nature of osteoarthritis, that the findings have worsened or remained the same in the approximate three year period.

Laboratory testing done on March 13, 2003 reveal a urine toxicology screen negative for any illicit substances and normal liver functional tests including a GGT of 17. This last test especially is consistent with a person who is not drinking excessively.

> [Plaintiff's] most recent radiograph results reveal moderate lumbar degenerative changes, right shoulder probably impingement, and very significant multi-level cervical disk disease.
>
> The critical clinical finding explored and confirmed today is that [plaintiff] has Schizoid Personality Disorder. This is consistent with [plaintiff's] visit with a Stout Street Clinic psychiatrist Dr. Chuck Oppegard who diagnosed that [plaintiff] has Schizoid Personality traits on January 9, 2001. It is clear that [plaintiff] fully meets the DSM-IV criteria for the full-blown Schizoid Personality disorder and that this has been a lifelong clinical issue for him. It is important to note that his psychiatric encounter on 10/18/01 with Dr. Clark should not be used in [plaintiff's] determination of disability, because Dr. Clark did not perform an MMSE exam, did not take any history regarding PTSD, major depressive or schizoid symptoms, nor did he delve into social history details adeuately at that brief walk in visit.
>
> [Plaintiff's] current medical problems include his ongoing degenerative joint disease of his cervical spine, chronic right shoulder pain with probable impingement syndrome, and chronic low back pain. . . .

(Rec. at 310-11).

The ALJ noted Dr. Farrell's two opinions that the plaintiff was incapable of performing any substantial gainful activity, but he rejected them. After summarizing these two opinions, the ALJ stated:

> [Dr. Farrell] updates his earlier letter, noting that the claimant is currently working day labor jobs one or two days a month if it is "light." . . . The claimant reports that he does not work more because there is no work available. . . . Dr. Farrell further notes that the claimant's depressive symptoms are not a major depressive disorder and the claimant scored twenty-nine out of thirty, within normal limits, on a mini mental status examination. . . . Dr. Farrell states that the claimant's current medical problems include degenerative joint disease of the cervical spine, chronic right shoulder pain with probable impingement, chronic low back pain and a schizoid personality disorder. . . . He again concludes that, " . . . with [the claimant's] limited education, extremely limited past work experience, ongoing medical problems and diagnosis of Schizoid Personality disorder, . . . he is incapable of any substantial gainful activity now and in the

future." . . . Dr. Farrell also completed a Med-9 form for the Colorado Department of Human Services, dated September 26, 2000, in which his [sic] concludes that the claimant is disabled for twelve months or more. . . .

The undersigned rejects the opinions of Dr. Farrell. First, Dr. Farrell's own clinical notes do not support Dr. Farrell's conclusions. For example, clinical notes from May 11, 2000, indicate that the claimant was doing well and had decreased pain. . . . Again, on June 15, 2000, the claimant had improved neck pain and his appetite was okay and concentration was stable. . . . He then complained of some fatigue and was drinking a twelve pack two to three days a week. . . . The claimant's pain was considered controlled in October 2000. . . . In January 2001, the claimant reported that his sleep was okay, his appetite was okay, he was reading novels and playing cards and had no depression. . . . On October 18, 2001, the claimant reported he was depressed but this was because he was "fighting SSI." . . . The claimant presented as properly dressed and groomed, denying suicidal thoughts but was slow talking and went "on and on" about his need for SSI. . . . However, it is further noted that the claimant was then receiving Aid to Needy Disabled and using his money for alcohol and not to obtain food and shelter. . . . The claimant himself stated that he had only tapered his drinking and went out drinking at the first of the month "as that is the only time" he has money. . . . The claimant was to return in one month but refused alcohol rehabilitation, stating that he was doing only what his lawyer said. . . . In short, these clinical notes indicate that the claimant's pain was controlled, he was generally not significantly depressed and he was continuing regular and excessive consumption of alcohol.

Second, Dr. Farrell's letters both contain the conclusion that the claimant cannot be gainfully employed and both state that this is based, not only on medical considerations, but on the claimant's limited education and limited past work experience. These considerations are beyond Dr. Farrell's expertise in that he is not a vocational expert but a family physician. Further, the claimant has a high school education which is not considered "limited" under Social Security regulations. Thus, Dr. Farrell is not employing the strict guidelines of Social Security. Additionally, the conclusion as to whether or not a claimant is disabled is ultimately that of the Commissioner. . . .

Finally, Dr. Farrell states in his letters that the claimant has been unable to work since July 1999. However, at that time, the claimant had been seen by Dr. Keleher and Dr. Keleher opined that the claimant was

able to perform light exertion work. . . .

(Rec. at 238-39) (citations to the Record omitted).

Plaintiff contends that the ALJ's decision "contains a very cursory discussion concerning [plaintiff's] mental impairments. It does not explicitly reject Dr. Farrell and Dr. Oppegard's opinion that [plaintiff] suffers from a schizoid personality disorder, but merely states that [plaintiff] had a personality disorder that did not meet one of the listings that would qualify him automatically for benefits under the five-step sequential analysis of an SSI claim." (Docket No. 21 at 3-4). In addition, the plaintiff asserts that "[t]he ALJ rejected Dr. Farrell's opinion concerning [plaintiff's] physical functional limitations because several chart notes indicated that [plaintiff] was feeling well physically or mentally on particular occasions, and because an initial examination performed for purposes of [plaintiff's] A.N.D. in July of 1999 . . . stated that [plaintiff] was physically capable of light work . . . . The ALJ also placed a great deal of emphasis, as in the first decision, on what the ALJ found to be the effect of [plaintiff's] drinking . . . ." (Docket No. 21 at 4). Furthermore, plaintiff contends that

> [t]he ALJ's decision to reject Dr. Farrell's opinion failed to properly apply the tests set forth in Myers [v. Apfel, 238 F.3d 617 (5th Cir. 2001),] and McGoffin [v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)], and is unsupported by substantial evidence.
>
> First, most of the factors that the ALJ relied on to reject Dr. Farrell's psychological assessment of [plaintiff] - [plaintiff's] arguing with his physicians, anger over having been denied SSI . . . - are not really inconsistent with Dr. Farrell's diagnosis of a schizoid personality disorder. To the extent that they are, this is a medical determination. The ALJ erroneously performed his own diagnosis based on these symptoms, something prohibited by McGoffin.

> Second, the ALJ did not apply the five-factor test required by Myers, but merely looked to whatever brief and conclusory items in the file that would support a rejection of Dr. Farrell's opinions. The walk-in visit of October 18, 2001 with Dr. Clark does not, as noted by Dr. Farrell himself, provide substantial evidence upon which to reject a diagnosis of a schizoid personality disorder. The July 1999 A.N.D. assessment, upon which the ALJ relied in large part to reject Dr. Farrell's assessment of [plaintiff's] physical functioning, also fails to provide substantial evidence upon which to reject the opinion of a treating physician. The test for light work in the A.N.D. assessment was limited to whether [plaintiff] could lift more than twenty pounds at one time, and ten pounds frequently. The SSI test for light work also includes tests for walking, sitting, standing, pushing and pulling. 20 C.F.R. § 404.1567(b).
>
> Thus, based on the ALJ's failure to follow the treating physician rule as defined in Tenth Circuit case law, the Commissioner's decision should be reversed.

(Docket No. 21 at 5-6).

After careful consideration, this court finds that the ALJ adequately considered and weighed the conclusions in the doctor's letter and gave specific, legitimate reasons for rejecting them. In addition, this court finds that the ALJ's decision was factually supported by the record. The ALJ properly considered the lack of support in the record for the opinions and the inconsistencies between those opinions and the evidence of record, and he made RFC findings regarding plaintiff's physical and mental abilities which are supported by substantial evidence. Furthermore, it is well-established that when a treating physician also offers an opinion that the claimant is totally disabled, such opinion "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). Here, the ALJ correctly noted that the doctor's letters both contain the conclusion that the plaintiff cannot be gainfully

employed and both state that this conclusion is based not only on medical considerations, but on the plaintiff's limited education and limited past work experience. The ALJ correctly stated that such considerations are beyond Dr. Farrell's expertise in that he is not a vocational expert but a family physician.

**Assessment of Plaintiff's Physical and Mental Impairments**

Plaintiff next asserts that "[o]ther than finding that [plaintiff's] mental impairments failed to meeting the listings, the ALJ failed to make adequate findings as to plaintiff's mental [RFC] as required by 20 C.F.R. 416.946(c)." (Docket No. 21 at 6). In particular, plaintiff contends that the ALJ's decision on remand did not include a completed psychiatric review technique form ["PRTF"], and thus the ALJ allegedly did not make a proper mental RFC determination.

Defendant correctly responds, however, that under the new regulations, which became effective on September 20, 2000, an ALJ is not required to complete a PRTF. See 20 C.F.R. § 416.920a(e). Nevertheless, while the ALJ did not complete a PRTF, he did make the following findings in his written decision with regard to the plaintiff's alleged mental impairment based on the psychiatric review technique, as required by the regulation:

> Specifically, the [ALJ] concludes that the [plaintiff] suffers mild limitation in daily living activities, mild to moderate limitation in social functioning and concentration, persistence and pace and no episodes of decompensation. On formal evaluation, the [plaintiff] had intact memory, concentration and cognition. Despite his complaints of not getting along with people, his own daily activities reflect that he maintains his social connections and enjoys card playing with his friends. This evidence supports no more than mild to moderate limitations in social functioning and concentration, persistence and pace. This gives the [plaintiff] the benefit of the doubt.

> The [ALJ] also notes that this is consistent with the [plaintiff's] demonstrated abilities on evaluation by Dr. Perry and take into account his functioning despite his alcohol abuse.

(Rec. at 240). This court agrees with the defendant that these findings are supported by the minimal mental findings throughout the record.

Plaintiff further contends that "[m]oreover, the ALJ must, in determining [plaintiff's RFC], consider the effect of his pain on his ability to engage in work-related activities. . . . The ALJ rejected [plaintiff's] testimony concerning his pain, in part, on [plaintiff's] decision to stop physical therapy . . . . However, there is nothing in the record indicating that physical therapy would have restored [plaintiff's] ability to work. Hence, it was error as a matter of law to reject [plaintiff's] testimony concerning pain on this basis." (Docket No. 21 at 6). The court, however, finds no error in the ALJ's credibility determination being based in part on the fact that the plaintiff discontinued his prescribed physical therapy. The ALJ stated in this regard that the plaintiff "testified that he suffers from debilitating pain in his shoulder and back. However, medical records reflect that his pain was being controlled with the use of medication . . . . Also, the record reflected that the [plaintiff] was benefiting from physical therapy but he chose to stop. If the [plaintiff's] pain were as severe as alleged, it is reasonable to expect that he would have continued with a program which was showing him good benefits and relief from his symptoms. That the [plaintiff] elected to discontinue a program which was beneficial to his progress suggests that his symptoms were not as severe as alleged." (Rec. at 239).

Furthermore, this court further finds that the ALJ very thoroughly considered

plaintiff's 's credibility and that the ALJ's credibility evaluation and RFC determination are supported by substantial evidence. The ALJ thoroughly considered the entire record yet did not find the plaintiff's "statements concerning his impairments and their impact on his ability to work [to be] entirely credible in light of [his] own description of his activities and life style, the degree of medical treatment required, the reports of the treating and examining practitioners and the findings made on examination." (Rec. at 237). The ALJ's credibility determinations are entitled to particular deference because, unlike reviewing courts, they have the ability "to observe the demeanor and guage the physical abilities of the claimant in a direct and unmediated fashion." White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001). As detailed by the defendant in the response brief (Docket No. 23 at 22-24), the record contains sufficient evidence to support the ALJ's RFC determination and his finding that the plaintiff is not fully credible.

**Further Development of the Record**

Plaintiff's final argument for reversal is his contention that the ALJ should have developed the record further if he was going to reject the treating physician's opinion. Plaintiff's position is that the evidence as presented was sufficient to demonstrate his disability, but the most recent consultative exams in the file were from 1999, and to the extent the ALJ did not accept the treating physician's opinion, he should have sought clarification from the physician or ordered additional consultative exams.

The regulations provide that "[w]hen the evidence [the ALJ] receive[s] from [a claimant's] treating physician or psychologist or other medical source is inadequate for

[the ALJ] to determine whether [the claimant is] disabled, [the ALJ] will need additional information to reach a . . . decision." 20 C.F.R. § 416.912(e). In such a case, the ALJ "will seek additional evidence or clarification from [a claimant's] medical source when the report from [that] source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . ." 20 C.F.R. § 416.912(e)(1). With regard to the need for consultative exams, the regulations provide that "[i]f the information [the ALJ] need[s] is not readily available from the records of [the claimanit's] medical treatment source, or [the ALJ is] unable to week clarification from [the claimant's] medical source, [the ALJ] will ask [the claimant] to attend one or more consultative examinations at our expense. . . ." 20 C.F.R. § 416.912(f).

Nevertheless, "[i]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). See Palmer v. Barnhart, 2006 WL 1581004 (D. Kan. June 6, 2006). In this case, the ALJ was not required to obtain more information from Dr. Farrell or obtain consultative examinations. The information the ALJ received from the doctor was not so incomplete that it could not be considered. Rather, the ALJ believed Dr. Farrell's opinions were not supported by and were inconsistent with evidence of record, and his opinion of disability was reserved to the Commissioner. Therefore, they were properly discounted by the ALJ, and this court is unable to reweigh the evidence and substitute its judgment for the ALJ's. Id. at 909.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's appeal is denied, and the Commissioner's final decision is affirmed.

Date: September 18, 2006
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge